# No. 25-1334

# United States Court of Appeals
# For the First Circuit

CLEVELAND BAKERS & TEAMSTERS HEALTH & WELFARE FUND, individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

v.

AMAG PHARMACEUTICALS, INC.; COVIS GROUP S.À R.L.; COVIS PHARMA GMBH,

Defendants-Appellees

*On Appeal from the United States District Court for the District of Massachusetts*

Civil Action No. 1:23-cv-12575-FDS

**REPLY BRIEF OF PLAINTIFF-APPELLANT**


Thomas M. Sobol
Erin C. Burns
Rachel A. Downey
HAGENS BERMAN SOBOL SHAPIRO LLP
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700

Joseph H. Meltzer
Terence S. Ziegler
Lisa M. Port
Donna Siegel Moffa
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 3

A. The IPR does not apply to RICO. ..... 3

1. Nothing in RICO's text or history supports the argument that Congress intended an inflexible standing rule to curtail its scope ..... 3

2. The defendants' reading of *Holmes* is illogical and contrary to fifty years of Supreme Court RICO precedent. ..... 5

3. The defendants' brief overstates the consensus among federal courts on applicability of the IPR. ..... 8

4. Barring the Plan's RICO claims will immunize drugmakers for liability for fraud. ..... 12

B. The Plan's RICO claim and state-law claims are not preempted. ..... 13

1. The FDCA did not implicitly repeal RICO. ..... 13

2. The FDCA does not preempt the Plan's state law claims. ..... 15

a. The Plan's arguments regarding the changes AMAG could have made to Makena's label are not waived. ..... 15

b. FDA regulations permitted AMAG to add information on PROLONG to Makena's "Indications and Usage" section. ..... 17

c. The FDA's Complete Response Letter is not "clear evidence" the FDA would not have allowed earlier or different revisions to Makena's label ..... 18

C. The Plan adequately pleaded reliance and fraud. ..... 20

D. The district court erred in failing to consider *Becher* discovery. ..... 23

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen Bradley Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers*,
325 U.S. 797 (1945) .......... 4

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) .......... 7, 8

*In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*,
804 F.3d 633 (3d Cir. 2015) .......... 12

*Bridge v. Phoenix Bond & Indem. Co.*,
553 U.S. 639 (2008) .......... 3, 8, 20, 21

*Carter v. Berger*,
777 F.2d 1173 (7th Cir. 1985) .......... 9, 10, 11

*Cavicchi v. Raytheon Co.*,
16 F. Supp. 3d 4 (D. Mass. 2014) .......... 19

*Colonial Life & Accident Ins. Co. v. Medley*,
572 F.3d 22 (1st Cir. 2009) .......... 19

*In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*,
590 F. Supp. 2d 1282 (N.D. Cal. 2008) .......... 13

*H.J., Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) .......... 3

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
392 U.S. 481 (1968) .......... 6

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258, 278 (1992) .......... *passim*

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977) .......... 7

*Illinois v. Ampress Brick Co., Inc.*,
536 F.2d 1163 (7th Cir. 1976) .......... 6

*Kousisis v. United States*,
605 U.S. 114 (2025) ........................................ 3, 5

*Maher v. AMAG Pharms., Inc.*,
No. 20-cv-152, 2024 WL 1376685 (D.N.J. Mar. 28, 2024) ........................................ 17

*McCarthy v. Recordex Serv., Inc.*,
80 F.3d 842 (3d Cir. 1996) ........................................ 10, 11

*Medical Marijuana, Inc. v. Horn*,
604 U.S. 593 (2025) ........................................ 8

*Merck Sharp & Dohme Corp. v. Albrecht*,
587 U.S. 299 (2019) ........................................ 17, 20

*Morissette v. United States*,
342 U.S. 246 (1952) ........................................ 5

*Morton v. Mancari* ........................................ 15

*Nat'l Org. for Women, Inc. v. Scheidler*,
510 U.S. 249 (1994) ........................................ 7

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
712 F.3d 21 (1st Cir. 2013) ........................................ 12, 20, 21, 23

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*,
520 F. Supp. 3d 1258 (C.D. Cal. 2021) ........................................ 14

*Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*,
943 F.3d 1243 (9th Cir. 2019) ........................................ 12

*Posadas v. Nat'l City Bank of N.Y.*,
296 U.S. 497 (1936) ........................................ 14

*Radzanower v. Touche Ross & Co.*,
426 U.S. 148 (1976) ........................................ 15

*Randolph v. IMBS, Inc.*,
368 F.3d 726 (7th Cir. 2004) ........................................ 14

*Rhode Island v. Narragansett Indian Tribe*,
19 F.3d 685 (1st Cir. 1994) .......... 14

*Russello v. United States*,
464 U.S. 16 (1983) .......... 4, 8

*Safe Streets All. v. Hickenlooper*,
859 F.3d 865 (10th Cir. 2017) .......... 12

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
473 U.S. 479 (1985) .......... 7, 8

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*,
873 F.3d 574 (7th Cir. 2017) .......... 12

*Trollinger v. Tyson Foods, Inc.*,
370 F.3d 602 (6th Cir. 2004) .......... 11

*United States v. Lindsey*,
3 F.4th 32 (1st Cir. 2021) .......... 16

*In re W. Liquid Asphalt Cases*,
487 F.2d 191 (9th Cir. 1973) .......... 6

*West Virginia v. Chas. Pfizer & Co., Inc.*,
440 F.2d 1079 (2d Cir. 1971) .......... 6

*Yegiazaryan v. Smagin*,
599 U.S. 533 (2023) .......... 4

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
541 F. Supp. 3d 164 (D. Mass. 2021) .......... 17

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
57 F.4th 327 (1st Cir. 2023) .......... 17

**Statutes**

18 U.S.C. § 1964 .......... 3

**Other Authorities**

21 C.F.R. § 201.57 .......... 18

## INTRODUCTION

The Plan's complaint alleges that AMAG and Covis knowingly sold false hope to pregnant women who had delivered prematurely before and had no way to prevent it from happening again. Through a fraudulent marketing campaign touting the efficacy of Makena—a drug they knew was useless and sure to be pulled from the market—the defendants raked in millions of dollars of undeserved profits at the expense of the Plan and other payors that covered the drug.

The defendants' brief, like the district court's opinion on which this appeal is based, misapplies the relevant law on three important questions.

The first is whether the indirect purchaser rule (IPR), a bright-line standing requirement from antitrust law, bars indirect purchasers from bringing private actions under the Racketeer Influenced and Corrupt Organizations Act (RICO). The defendants' misinterpretation of precedent does not withstand scrutiny; RICO's text, history, and purpose and a half-century of Supreme Court caselaw clearly preclude application of an inflexible standing rule borrowed from antitrust law to private RICO actions. This Court should stand by its well-reasoned decision in *Neurontin* and find that the IPR has no place in the RICO context. With the same question currently before the Second, Ninth, and D.C. Circuit Courts of Appeals, it may soon be in good company.

The second is whether the FDCA preempts the Plan's RICO and state law claims. As to RICO, the defendants' argument that the FDCA must "control" (an

argument that it never made to the lower court) is untenable. Implied repeal requires a finding of irreconcilable conflict or clear intention to repeal—an analysis the district court never performed and for which no support exists. With respect to the state law claims, the defendants' argument that they could not have used the "changes being effected" (CBE) process to add information about the PROLONG study to Makena's label has no basis in the text of the FDA regulations and would undermine the purpose of the CBE process. And the defendants' "clear evidence" that the FDA would have rejected *any* change to Makena's label is predicated on a complete response letter denying a PAS that (i) defendants have never provided, (ii) was submitted months after the PROLONG results were available, and (iii) proposed burying that data in the "Clinical Studies" section of the label. At the very least, this is a factual question that is not appropriate for determination on a motion to dismiss.

The third issue is whether the Plan's complaint adequately alleged reliance and fraud. The defendants' arguments are incompatible with *Bridge*'s directive that first-party reliance is not an element of a RICO claim where mail fraud is the predicate offense. The complaint adequately alleges that the Plan and class members paid millions of dollars for Makena and that their injuries were the foreseeable and intended result of the defendants' fraudulent statements.

For these reasons, as well as those in the Plan's opening brief, the Court should reverse.

## ARGUMENT

### A. The IPR does not apply to RICO.

#### 1. Nothing in RICO's text or history supports the argument that Congress intended an inflexible standing rule to curtail its scope.

Any analysis of RICO must "[s]tart with the statute."[1] The IPR is found nowhere in the plain language of RICO's civil enforcement provision, which grants a private right of action to "any person injured in his business or property by reason of a violation of" certain prohibited activities.[2] This broad language "has no purchaser/seller standing requirement,"[3] and "courts are without authority to restrict the application of" RICO by adding one.[4]

Nor does anything in RICO's legislative history indicate that Congress intended to limit who could enforce it. Although Congress borrowed RICO's remedial language from the Clayton Act, it took pains to ensure that restrictive antitrust precedent, including inflexible standing and proximate cause requirements, would not hinder use of RICO's civil enforcement provision to combat organized crime.[5]

---

[1] *Kousisis v. United States*, 605 U.S. 114, 123 (2025); *see also H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989) ("We begin, of course, with RICO's text . . . .").

[2] 18 U.S.C. § 1964(c).

[3] *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 278 (1992) (O'Connor, J., concurring).

[4] *Id.* at 286 (quoting *United States v. Turkette*, 452 U.S. 576, 587 (1981)); *see also Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 660 (2008) (courts "are not at liberty to rewrite RICO" to add extra-textual policy limitations).

[5] *See* Br. of Pl.-Appellant at 23–24 (Plan's Br.).

Congress's refusal to constrain § 1964(c) with rigid requirements from antitrust law makes perfect sense considering the laws serve fundamentally different purposes. The antitrust laws were designed to address monopolistic practices that restrain trade and harm competition.[6] Antitrust injury almost invariably occurs in the form of inflated prices paid by a direct purchaser who can be relied upon to vindicate the antitrust violation; any injury sustained by a subsequent purchaser is necessarily derivative. RICO, in contrast, was "intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots."[7] "Notoriously expansive" in scope,[8] RICO has dozens of distinct predicate acts that beget an "infinite variety of claims"—most of which have nothing to do with purchases at all—making it "virtually impossible to announce a black-letter rule that will dictate the result in every case."[9] A strict standing requirement makes no sense in this context. "While a bright-line rule would no doubt be easier to apply, fealty to the statute's focus requires a more nuanced approach."[10]

[6] *See, e.g.*, *Allen Bradley Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers*, 325 U.S. 797, 803 (1945) (citing S. Rep. No. 698 (1914)).

[7] *Russello v. United States*, 464 U.S. 16, 26 (1983).

[8] *Yegiazaryan v. Smagin*, 599 U.S. 533, 545 (2023) (citation modified).

[9] *Holmes*, 503 U.S. at 272 n.20 (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536 (1983)).

[10] *Yegiazaryan*, 599 U.S. at 545.

### 2. The defendants' reading of *Holmes* is illogical and contrary to fifty years of Supreme Court RICO precedent.

The defendants wrongly argue that *Holmes*, "imported the Clayton Act's proximate-causation precedents"—including the IPR—"into the RICO context" and thus "all but dictates the outcome" here.[11]

In *Holmes*, the Court held that RICO's "by reason of" standard required not only but-for causation, but also proximate causation, a conclusion rooted in the so-called "old soil" doctrine: "When Congress uses a term with origins in the common law, [courts] generally presume that the term 'brings the old soil with it.'"[12] "By reason of" was just such term. For decades before RICO's enactment, "courts had read [the Sherman Act] to incorporate common-law principles of proximate causation"—as opposed to simply but-for causation—and determined that Congress meant to incorporate those same principles into the Clayton Act.[13] So, the Court noted, when Congress used the same "by reason of" language for RICO, it made sense to assume that Congress "intended its words to have the same meaning that courts had already

---

[11] Resp. Br. for Defs.-Appellees at 21 (Defs.' Br.).

[12] *Kousisis*, 605 U.S. at 124 (quoting *Sekhar v. United States*, 570 U.S. 729, 733 (2013)); *see also Morissette v. United States*, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts . . . the meaning its use will convey to the judicial mind unless otherwise instructed.").

[13] *Holmes*, 503 U.S. at 267 & 268 n.14.

given them."[14]

The IPR, in contrast, was most definitely not "old soil" when RICO was enacted. Indeed, the Supreme Court did not decide *Illinois Brick*—the case that established the bright-line indirect-purchaser bar for antitrust cases—until 1977, seven years *after* RICO was enacted. How then could Congress have intended to incorporate into RICO an indirect purchaser rule that did not yet exist and had no roots in common law?

The fact that *Hanover Shoe* predated RICO's enactment is irrelevant. While *Illinois Brick* was rooted in the principles set forth in *Hanover Shoe*, the defendants' assertion that the IPR was "established in" the earlier case is wrong.[15] *Hanover Shoe* was about a defendant's ability to assert a pass-through defense against direct purchaser claims; it did not consider or decide whether indirect purchasers had standing to sue under the Clayton Act.[16] And in the years between *Hanover Shoe* and *Illinois Brick*, several courts of appeal held that they did.[17] Indeed, this circuit split was

[14] *Id.* at 258.

[15] Defs.' Br. at 22.

[16] *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 488 (1968).

[17] *See In re W. Liquid Asphalt Cases*, 487 F.2d 191, 196–200 (9th Cir. 1973) (holding that *Hanover Shoe* did *not* limit Clayton Act standing to direct purchasers); *Illinois v. Ampress Brick Co., Inc.*, 536 F.2d 1163, 1166 (7th Cir. 1976) (same); *West Virginia v. Chas. Pfizer & Co., Inc.*, 440 F.2d 1079, 1088 (2d Cir. 1971) (distinguishing *Hanover Shoe*).

the reason the Court took up *Illinois Brick* and decided the novel question of whether *Hanover Shoe*'s restrictions on the defensive use of pass-on prohibited the inverse.[18] Simply put, *Hanover Shoe* comes nowhere close to providing the kind of "old soil" that would allow courts to presume Congress intended to silently incorporate the IPR into RICO.

And such a presumption would fly in the face of a half-century of Supreme Court RICO precedent. The defendants can attempt to distinguish individual cases, but they cannot deny what is notably absent from the Court's half-dozen opinions on the proximate cause element: any indication that the IPR applies to RICO. The Court could easily have announced the applicability of the IPR in *Holmes*, *Anza*, *Bridge*, or *Hemi*—opinions issued decades after *Illinois Brick*. But the Court has instead consistently (1) reiterated that RICO "requires no more than" allegations that a plaintiff "has been injured in his business or property by the conduct constituting the violation,"[19] which demands only a showing of "*some* direct relation between the injury

---

[18] *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 728 (1977) ("We granted certiorari to resolve a conflict among the Courts of Appeals on the question whether the offensive use of pass-on authorized by the decision below is consistent with *Hanover Shoe*'s restrictions on the defensive use of pass-on." (citation modified)).

[19] *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *see also, e.g.*, *Holmes*, 503 U.S. at 279 (O'Connor, J., concurring) ("Of course, a RICO plaintiff 'only has standing if . . . he has been injured in his business or property by [reason of] the conduct constituting the violation.'" (quoting *Sedima*, 473 U.S. at 497)); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255–56 (1994) (summarily dismissing respondents' argument that the petitioner lacked RICO standing, finding petitioners'

asserted and the injurious conduct alleged," (2) emphasized that proximate cause "is a flexible concept that does not lend itself to 'a black-letter rule that will dictate the result in every case,'"[20] and (3) rejected the imposition of rigid and technical limitations drawn from other areas of the law as inconsistent with RICO's text, history, and purpose.[21] As the Court reaffirmed just months ago in *Medical Marijuana, Inc. v. Horn*, the "Clayton Act and § 1964(c) are not interchangeable,"[22] and RICO's remedial provisions leave no room for "atextual hurdles."[23]

**3. The defendants' brief overstates the consensus among federal courts on applicability of the IPR.**

The defendants' reports of "broad consensus" among federal courts are greatly

---

general factual allegations that the respondents' conspiracy "injured the[ir] business and/or property interests" were sufficient and "[n]othing more [was] needed to confer standing" at the pleading stage).

[20] *Bridge*, 553 U.S. at 654 (emphasis added) (quoting *Holmes,* 503 U.S. at 272 n.20); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.").

[21] *See Sedima*, 473 U.S. at 498–99 ("In borrowing its 'racketeering injury' requirement from antitrust standing principles, the court below created exactly the problems Congress sought to avoid."); *Russello*, 464 U.S. at 21 ("It undoubtedly was because Congress did not wish the forfeiture provision of § 1963(a) to be limited by rigid and technical definitions drawn from other areas of the law that it selected the broad term 'interest' to describe those things that are subject to forfeiture under the statute. Congress selected this general term apparently because it was fully consistent with the pattern of the RICO statute in utilizing terms and concepts of breadth.").

[22] 604 U.S. 593, 608 (2025) (citation modified).

[23] *Id.* at 614 (Jackson, J., concurring).

exaggerated.[24] Numerous lower courts have found that the IPR does *not* apply to civil RICO cases.[25] The drafter of and foremost authority on RICO agrees.[26]

The defendants are technically correct that "[e]very circuit to have addressed th[e] question" has held that indirect purchasers are barred from bringing civil RICO claims.[27] But with the question of the IPR's applicability to civil RICO currently before this Court and the Second, Ninth, and D.C. Circuit Courts of Appeals, this unanimity may be short-lived.[28] And closer scrutiny of the cases on which the defendants rely—none of which controls here—reveals that this argument is far less persuasive than it seems.[29]

For example, *Carter v. Berger*, decided seven years before *Holmes*, did not involve purchase transactions but a scheme "to obtain lower tax assessments for property of [the defendant's] clients."[30] The RICO plaintiffs were a group of lawful taxpayers who

---

[24] Defs.' Br. at 20.

[25] *See* Plan's Br. at 29 n.111.

[26] *See* Br. of Law Scholars as *Amici Curiae* in Supp. of Appellant, *Humana, Inc. v. Biogen, Inc.*, No. 24-1012 (1st Cir. Mar. 18, 2024) (Professor G. Robert Blakey among amici arguing that the IPR does not apply to private RICO actions).

[27] Defs.' Br. at 19.

[28] *See In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, No. 24-3296 (2d Cir.) (fully briefed); *Biederman v. FCA US LLC*, No. 25-3854 (9th Cir.) (opening and responsive briefs filed); *MSP Recovery Claims, Series LLC v. Advanced Care Scripts*, No. 25-7045 (D.C. Cir.) (appellant's brief due December 1st).

[29] Defs.' Br. at 19.

[30] 777 F.2d 1173, 1174 (7th Cir. 1985).

"claim[ed] that they had to pay more tax because [the defendant's] clients paid less."[31] The Seventh Circuit held that the plaintiffs' claim could not survive because Cook County, which had filed its own RICO claim to recover for the same damages, was the most directly injured party.[32] Though the court stated that *Illinois Brick* applies to RICO, the rule it adopts from *Illinois Brick* is simply that RICO, like the Clayton Act, is available only to the "directly injured party"—not that that party is *always* the direct purchaser in a RICO scheme.[33] And even in that context, the Seventh Circuit expressed concerns about applying rules developed in antitrust cases to RICO suits. Recognizing that "a government may find itself under the sway of the very people whose criminal activities produced the loss from which it suffers," the court stated that "[t]he machinations of the wrongdoers, combined with the difficulty of inducing agents of the government to exact maximum effort at all times, may counsel permitting suits by indirect victims more freely in RICO cases than in the law of antitrust."[34]

In *McCarthy v. Recordex Service, Inc.*, the plaintiffs did not even challenge the

---

[31] *Id.*

[32] *Id.* at 1177.

[33] *Id.* at 1176–77.

[34] *Id.* at 1178.

IPR's applicability to RICO.[35] While the Third Circuit stated in dicta that the IPR must deny RICO standing to "indirect victims" because "antitrust standing principles apply equally to allegations of RICO violations," it cited *Holmes* as its sole authority.[36] But, as discussed *supra*, *Holmes* says no such thing.

*Trollinger v. Tyson Foods, Inc.*,[37] like *Carter*, neither involved purchase transactions nor directly considered whether to apply a bright-line IPR to RICO. And despite dictum stating that, "[w]hile indirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen, direct purchasers do have standing," the Sixth Circuit otherwise correctly concluded that RICO requires only some direct relationship between the violation and the injury.[38] Its holding that Tyson's employees were the "directly injured party" best situated to sue for Tyson's wage-suppressing practice of hiring undocumented immigrants was therefore entirely consistent with the proximate cause standard articulated in *Holmes*.[39]

And, importantly, the defendants' consensus argument ignores that proper application of the Supreme Court's RICO precedent precludes consideration of the

---

[35] 80 F.3d 842, 855 (3d Cir. 1996) ("[P]laintiffs have conceded that, if they lacked antitrust standing, they also lacked RICO standing.").

[36] *Id.*

[37] 370 F.3d 602 (6th Cir. 2004).

[38] *Id.* at 612–13, 616.

[39] *Id.* at 616–17.

IPR. Many circuit courts—including this Court in *Neurontin*—have correctly applied the *Holmes* framework to evaluate the viability of indirect purchasers' RICO claims.[40]

**4. Barring the Plan's RICO claims will immunize drugmakers for liability for fraud.**

The defendants point to the rationale for the IPR in *antitrust* cases to claim that the policy considerations that militate against limiting RICO recovery to direct purchasers in the healthcare context "fail on their own terms." But the Plan is not disputing whether the IPR is appropriate in the antitrust context. RICO, however, with its dozens of predicate acts, can give rise to an "infinite variety of claims"[41]—most of which have nothing to do with purchases. In this context, the IPR makes no sense.

This case shows why the distinction matters. The Plan and other third-party payors were the primary target and intended victim of the alleged fraudulent scheme, the success of which was contingent on their paying the exorbitant cost of Makena prescriptions for as long as possible. The defendants' ill-gotten profits were the direct and foreseeable result. Third-party payors are the party best situated and most

---

[40] *See, e.g.*, *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 943 F.3d 1243, 1248–52 (9th Cir. 2019); *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs.*, 873 F.3d 574, 575–78 (7th Cir. 2017); *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 889–91 (10th Cir. 2017); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 804 F.3d 633, 643–45 (3d Cir. 2015); *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 35–40 (1st Cir. 2013).

[41] *Holmes*, 503 U.S. at 272 n.20.

motivated to enforce the law in this case, and no more direct purchaser has sought to do so. Denying their claims under the IPR would insulate the defendants from liability and embolden other drugmakers to exploit vulnerable patient populations to line their own pockets—a result incompatible with Congress's mandate that RICO must "be liberally construed to effectuate its remedial purposes."

**B. The Plan's RICO claim and state-law claims are not preempted.**

**1. The FDCA did not implicitly repeal RICO.**

The defendants, citing no legal authority, assert that "[w]here the FDCA prohibits a manufacturer from taking certain actions, as here, a plaintiff cannot use RICO to impose liability."[42] While it is true that plaintiffs may not use RICO "as a vehicle to bring a private cause of action that is based on violations of the FDCA," insofar as a plaintiff "can identify specific representations by Defendants that are literally false, misleading, or contain material omissions, the claims are actionable under RICO . . . ."[43] "'[T]he simple fact that a matter touches upon an area dealt with by the FDA is not a bar to proceeding with a claim' of fraud under another federal statute, such as RICO."[44] To the contrary, "enforcement of RICO is consistent [with]

---

[42] Defs.' Br. at 43.

[43] *In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*, 590 F. Supp. 2d 1282, 1290–92 (N.D. Cal. 2008) (citing *Mut. Pharm. v. Ivax Pharms., Inc.*, 459 F. Supp. 2d 925, 935 (C.D. Cal. 2006)).

[44] *Id.* at 1291 (alteration in original) (quoting *Mut. Pharm.*, 459 F. Supp. 2d at 935).

and complementary to the FDCA's purpose of ensuring honest disclosures of drug efficacy."[45]

Determining whether one federal statute implicitly repeals another is not, as the district court stated, "essentially the same" as determining whether a federal statute preempts state law.[46] "When two federal statutes address the same subject in different ways," a court must assess "whether one implicitly repeals the other."[47] And "repeal by implication is a rare bird indeed."[48] It can only be found (1) "where provisions in two acts are in irreconcilable conflict," or (2) "if the later act covers the whole subject of the earlier one and is clearly intended as a substitute."[49] Even assuming *arguendo* that this argument had been raised anywhere in the record (it was not) and the district court had applied the correct standard (it did not), the district court could not possibly have concluded that FDCA implicitly repealed RICO. Such a conclusion would have no support in the legislative history of either statute and would be anathema to RICO's liberal construction mandate.

---

[45] *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 520 F. Supp. 3d 1258, 1277 (C.D. Cal. 2021) (citation modified).

[46] *See* Mem. & Order, ADD-014.

[47] *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004) (citing *Branch v. Smith*, 538 U.S. 254, 273 (2003), and *J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 141–144 (2001)); *see also Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 703 (1st Cir. 1994).

[48] *Randolph,* 368 F.3d at 730.

[49] *Posadas v. Nat'l City Bank of N.Y.*, 296 U.S. 497, 503 (1936)).

The defendants now argue that, "because the FDCA deals specifically with the issue at hand, it controls,"[50] citing *Morton v. Mancari*[51] and *Radzanower v. Touche Ross & Co.*[52] But these cases support the opposite conclusion. Both, after finding no implied repeal of the at-issue statutory provisions, noted that "[t]he courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."[53] "Since it is possible for" the FDCA and RICO to "coexist," "they are not so repugnant to each other to justify a finding of an implied repeal by this Court."[54]

**2. The FDCA does not preempt the Plan's state law claims.**

**a. The Plan's arguments regarding the changes AMAG could have made to Makena's label are not waived.**

The defendants' brief suggests the Plan consistently argued to the district court that wholesale removal of Makena's "Indications and Usage" section was the only label change sufficient under state law and "abandon[ed]" that argument on appeal.[55]

---

[50] Defs.' Br. at 44.

[51] 417 U.S. 535 (1974).

[52] 426 U.S. 148 (1976).

[53] *Morton*, 417 U.S. at 551; *Radzanower*, 426 U.S. at 155.

[54] *Radzanower*, 426 U.S. at 154–57.

[55] Defs.' Br. at 35; *see also id.* at 37–38 ("[T]he Plan no longer argues that Makena's approved indication should have been deleted from the label.").

That is not true. The Plan's Rule 12(b)(6) opposition articulated multiple ways AMAG could have availed itself of the CBE process to avoid state-law liability, including "us[ing] the regulation to 'strengthen a contraindication, warning, [or] precaution' with the inclusion of the PROLONG data."[56] At the hearing on the motion, the Plan confirmed that it was *not* arguing that AMAG should have entirely removed the indications from Makena's label and instead offered several options expressly permitted under the CBE regulation.[57] The "most straightforward" change, the Plan explained, would have been for AMAG to "add a sentence to the indication section" explaining that the study "designed to verify Makena's clinical benefit found that it was not effective at reducing the risk of recurrent preterm birth."[58] The defendants' waiver argument is thus baseless. In this circuit, any argument "'raised squarely' in the district court"—whether in briefing or argument—is preserved for purposes of appellate review.[59]

---

[56] Pls.' Opp'n to Defs.' Mots. to Dismiss at 9, No. 23-cv-12575 (D. Mass. July 18, 2024), ECF No. 57 (quoting 21 C.F.R. § 314.70(b)(1)).

[57] Tr. of Feb. 18, 2025 Mot. Hr'g at 10:21–11:16, JA-355–56.

[58] *Id.* at 356. Because the Plan does not assert that AMAG should have removed Makena's indication from the label, the defendants' attempts to frame this as a "stop selling" case are meritless. *See* Defs.' Br. at 3, 17, 34.

[59] *United States v. Lindsey*, 3 F.4th 32, 41 (1st Cir. 2021) (quoting *United States v. Peake*, 874 F.3d 65, 72 (1st Cir. 2017)). In *Lindsey*, the Court held that the appellant's particularity argument was not preserved because he had failed to raise it *either* in the motion or during the hearing. *Id.*

### b. FDA regulations permitted AMAG to add information on PROLONG to Makena's "Indications and Usage" section.

The Plan is not required to show which of the proffered changes available under the CBE process was most appropriate[60] because the *defendants* bear the burden of establishing the "demanding defense" of impossibility.[61] To succeed with that defense, the defendants must prove that "federal law (including appropriate FDA actions) prohibited the drug manufacturer from adding *any and all* warnings to the drug label that would satisfy state law."[62] They have not done so.

The defendants' brief first argues that altering the "concise statement of [Makena's] indications" was a "major change" not permitted under the CBE.[63] But, as stated above, the Plan is not arguing that AMAG should have removed Makena's only indication from the label.

---

[60] *See Maher v. AMAG Pharms., Inc.*, No. 20-cv-152, 2024 WL 1376685, at *6 (D.N.J. Mar. 28, 2024) (finding, in case involving similar allegations and identical facts, that court need not determine whether deletion of misrepresentations about Makena's efficacy was a "major change" because the plaintiffs had alternatively argued that AMAG could have used the CBE exception "[t]o add or strengthen a contraindication, warning, [or] precaution" (quoting 21 C.F.R. § 314.70(c)(6)(iii)(A))); *see also In re Zofran (Ondansetron) Prods. Liab. Litig.*, 541 F. Supp. 3d 164, 167–68 (D. Mass. 2021) (identifying only generalized warning proposed by plaintiffs).

[61] *In re Zofran (Ondansetron) Prods. Liab. Litig.*, 57 F.4th 327, 335–36 (1st Cir. 2023) (quoting *Wyeth v. Levine*, 555 U.S. 555, 573 (2009)).

[62] *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 313–14 (2019) (emphasis added).

[63] Defs.' Br. at 37.

The defendants then claim, citing nothing but "common sense," that "diluting [Makena's label] with contradictory information regarding 'doubts' over Makena's effectiveness for [its] sole indication" would also constitute a "major change."[64] But this reading is irreconcilable with subsection (c) of § 201.57, which sets forth additional information that must be included the "Indications and Usage" section of a drug label when applicable. This information includes, *inter alia*, "a succinct description of the limitations of usefulness of the drug and *any uncertainty about anticipated clinical benefits*"[65] or a statement indicating "there is a *lack of evidence that the drug is effective* or safe for [a] use or condition."[66] If the FDA intended to exclude clarifying statements about drug efficacy based on newly acquired information from the CBE process, it surely would have referenced § 201.57(c) in the text of the regulation. And adopting the defendants' interpretation would effectively excise § 314.70(c)(6)(iii)(D) from the CBE regulation for any single-indication drug.

#### c. The FDA's Complete Response Letter is not "clear evidence" the FDA would not have allowed earlier or different revisions to Makena's label.

The defendants, like the district court, take the position that the FDA's refusal to allow the defendants' Prior Approval Supplement (PAS)—submitted to the FDA

[64] *Id.*

[65] 21 C.F.R. § 201.57(c)(2)(i)(B) (emphasis added)

[66] 21 C.F.R. § 201.57(c)(2)(ii) (emphasis added).

in September of 2019, seven months after the topline PROLONG results were disclosed—means, as a matter of law, that a moderate change to the Makena label through the CBE process was also clearly foreclosed. It does not.

Indeed, a closer look at the Complete Response Letter (CRL) casts immediate doubt on the "clear evidence" determination. The CRL states specifically that the FDA denied AMAG's proposed label change in October 2020 because the FDA was actively deliberating whether to withdraw the Makena's approval:

> CDER has determined that Makena is not shown to be effective and is *proposing to withdraw its approval*. Therefore, we cannot approve a supplement for labeling revisions to address the findings of Trial 003 at this time.[67]

This does not, however, mean the FDA would have denied a moderate change to the label along the lines that the Plan suggested made at the time PROLONG was announced in March 2019 (or even earlier, based on AMAG's possession of non-public information about the PROLONG study). At best, these are questions of fact that are unknown at this stage of the litigation, making a preemption ruling in the defendants' favor inappropriate.[68]

---

[67] Complete Response Letter, JA-301 (emphasis added).

[68] *See Cavicchi v. Raytheon Co.*, 16 F. Supp. 3d 4, 9 (D. Mass. 2014) (refusing to dismiss on preemption grounds at motion to dismiss stage due to factual disputes including failure to provide court with agreement on which preemption defense was based); *Colonial Life & Accident Ins. Co. v. Medley*, 572 F.3d 22, 29 (1st Cir. 2009) ("We observe here only that, given the existence of [a] factual dispute, we see several problems with the district court's determination that preemption was "facially

Highlighting the fact that the court impermissibly made factual findings on an incomplete record is that the defendants did not even provide the full PAS to the district court. Absent this information, "the uncontested record" below is at best incomplete. And the defendants' claim (without citation) that the FDA would have rejected a change no matter the section of the label[69] is baseless speculation that is insufficient to meet the defendants' high burden. As the Supreme Court has "cautioned many times before, the 'possibility of impossibility [is] not enough.'"[70]

### C. The Plan adequately pleaded reliance and fraud.

The defendants do not dispute that, under *Bridge*, first-party reliance is not an element of a RICO claim where mail fraud is the predicate offense.[71] First-party reliance is also not required to show proximate cause in a private RICO case. Instead, as the First Circuit made clear in *Neurontin*, under Supreme Court precedent, even

---

conclusive."); *see also Albrecht*, 587 U.S. at 317 ("[I]f the FDA rejected a drug manufacturer's supplemental application to change a drug label . . . , the meaning and scope of that decision might depend on what information the FDA had before it.").

[69] The evidence in the record shows that the defendants' PAS sought only to add information about the PROLONG study in the "Clinical Studies" section. *See* Submission of AMAG Pharms., Inc. in Response to FDA's Notice of Opportunity for Hr'g & Proposal to Withdraw Approval of MAKENA®, JA-309.

[70] *Albrecht*, 587 U.S. at 314 (alteration in original) (quoting *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 635 (2011)).

[71] *Bridge*, 553 U.S. at 661 ("A plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations.").

where there is no evidence that a RICO plaintiff received the misrepresentations at issue, a plaintiff can adequately allege proximate causation under RICO by showing that *someone* in the causal chain relied on them.[72]

Here, the district court erred in finding that the Plan failed to "state the fraud predicates of the RICO claim with sufficient particularity," [73] pointing to a purported lack of first-party reliance allegations, even though such allegations are not required.[74] This error is even more glaring in light of the relaxed Rule 9(b) pleading standard that the district court should have, but failed to, apply to the fraud allegations in this case.[75] As the complaint details, the goals of the defendants' fraudulent marketing campaign —to convince PBMs to place Makena on their formularies, healthcare providers to write prescriptions for Makena, and patients to request Makena prescriptions—show the Plan was the primary and intended victim of the scheme.[76] These allegations include:

- Allegations that the Plan covered Makena prescriptions for its members

[72] 712 F.3d at 36 ("The *Bridge* Court rejected the attempt to impose a direct reliance requirement on top of the statutory language providing a private right of action under RICO, finding no support for it in the common law.").

[73] Mem. & Order, ADD-018. The Plan's opening brief also describes how the Court erred in finding that the Plan failed to adequately plead with the requisite particularity the other elements of their RICO claim.

[74] *Bridge*, 553 U.S. at 661.

[75] Plan's Br. at 43-47 (discussing applying relaxed pleading standard when underlying facts are peculiarly within the defendants' control).

[76] *Neurontin*, 712 F.3d at 37.

even after the PROLONG study results were made publicly available because of and in reliance on the defendants' ongoing misrepresentations and omissions about Makena's efficacy and statements meant to disparage the study;[77]

- Allegations that the Plan and other class members paid millions of dollars for Makena that they would not have paid absent the defendants' fraudulent statements (i.e., in reliance on those statements); in fact, the defendants expressly recognized that they were "actively engaging the physician and payer communities and the success of our focused outreach is evidenced by Makena's improving performance metrics";[78]

- Allegations that the Plan's PBM reviewed clinical and financial information for Makena provided by the defendants when making favorable formulary placement decisions;[79] and

- Through the Makena Care Connection, the defendants engaged in a *direct marketing campaign* that targeted healthcare providers and third-party payors to increase the number of Makena prescriptions and ensure coverage and payment by those payors and also directly engaged current and prospective patients to encourage them to seek out Makena prescriptions and induce payors to pay for their Makena prescriptions by among other things, providing talking points to patients and healthcare providers.[80]

Accordingly, the Plan has sufficiently pleaded that the defendants targeted PBMs, the Plan and other class members, healthcare providers, and other payors, and that someone relied on the defendants' fraudulent statements. Had they not, Makena would not have been placed on formularies, and the Plan would not have paid for an

---

[77] *See* Compl. ¶ 17, JA-024; *id.* ¶ 162, JA-072; *id.* ¶ 132, JA-062–63.

[78] *See id.* ¶¶ 107–08, JA-054–55; *id.* ¶ 164, JA-072.

[79] *See id.* ¶¶ 68–79, JA-042–46; *id.* ¶ 16, JA-023; *id.* ¶ 162, JA-072.

[80] *See id.* ¶¶ 81–89, JA-046–50.

ineffective drug. This is sufficient at the motion to dismiss stage, and it was error to hold otherwise.

To the extent the district court conflated reliance with causation in assessing that element, *Bridge* and *Neurontin* further support the conclusion that proximate cause is met here notwithstanding no formal showing of first-party reliance. In *Neurontin*, relying on *Bridge*, the First Circuit found that the plan there was a "primary and intended victim of Pfizer's scheme to defraud . . . , [and] its injury was a foreseeable and natural consequence of Pfizer's scheme—a scheme that was designed to fraudulently inflate the number of Neurontin prescriptions for which TPPs paid."[81] Therefore, based on *Bridge,* evidence that the plan there was specifically targeted was not required under RICO because the "plan's injury was a natural consequence of [the] fraudulent scheme."[82] The same is true here.

### D. The district court erred in failing to consider *Becher* discovery.

The defendants conclude by misunderstanding the Plan's argument that the lower court erred in failing to properly consider whether *Becher* discovery was warranted. The issue on appeal is not whether the district court sufficiently explained its reasoning in denying *Becher* discovery, but rather that the district court performed

---

[81] *Neurontin*, 712 F.3d at 37 (quoting *Bridge*, 553 U.S. at 658).

[82] *Id.* ("As Judge Posner stated in the *Bridge* case, after remand: 'The doctrine of proximate cause . . . protects the ability of primary victims of wrongful conduct to obtain compensation. . . ." (citing *BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 756 (7th Cir. 2011))).

no analysis whatsoever. If such an analysis was done, the lower court would have concluded *Becher* discovery is appropriate here.

## CONCLUSION

For the foregoing reasons, and the reasons stated in the Plan's opening brief, this Court should reverse the district court's grant of the motion to dismiss.

Dated: November 10, 2025

Respectfully submitted,

/s/ Erin C. Burns
Thomas M. Sobol
Erin C. Burns
Rachel A. Downey
HAGENS BERMAN SOBOL SHAPIRO LLP
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
tom@hbsslaw.com
erinb@hbsslaw.com
racheld@hbsslaw.com

Joseph H. Meltzer
Terence S. Ziegler
Lisa M. Port
Donna S. Moffa
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
jmeltzer@ktmc.com
tziegler@ktmc.com
llambport@ktmc.com
dmoffa@ktmc.com

*Counsel for Plaintiff-Appellant Cleveland Bakers and Teamsters Health & Welfare Fund*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 6,046 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Garamond in 14-point font.

Dated: November 10, 2025

/s/ Erin C. Burns
Erin C. Burns